United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>CALA STEVENS CREEK/MONROE, LLC, et al.,<br><br>    Defendants. | Case No. 17-CV-04574-LHK<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 79, 89 |

In 2017, Plaintiff Scott Johnson ("Plaintiff") brought this action concerning the availability of accessible parking at Sunny Valley Spa ("the Spa"). Plaintiff sues the three owners of the property in which the Spa is located: Cala Stevens Creek/Monroe, LLC; Cala Stevens Creek/Monroe, LP; and Cala Holdings, LLC (collectively, "Defendants"). Plaintiff alleges that the Spa failed to provide a van accessible parking space in violation of the Americans with Disabilities Act of 1990 ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"). Since Plaintiff filed suit, however, the Spa closed, and the tenant space currently sits vacant. Now, on the parties' Cross-Motions for Summary Judgment, the Court dismisses Plaintiff's ADA claim for mootness and lack of jurisdiction; the Court therefore denies Plaintiff's motion for summary judgment as to that claim. However, the Court elects to retain jurisdiction over Plaintiff's Unruh

Act claim. The Court grants Plaintiff's motion for summary judgment as to the Unruh Act claim and denies Defendant's motion for summary judgment as to the same.

**I.     BACKGROUND**

Plaintiff Scott Johnson has quadriplegia, which means he cannot walk and uses a wheelchair to move through the world. As a consequence, he drives a specially equipped van for which he has been issued a Disabled Person Parking Placard by the California Department of Motor Vehicles. ECF No. 89-4 ("Johnson Decl.") ¶ 3. According to Plaintiff, he visited Sunny Valley Spa on at least five occasions: on June 19 2015; October 15, 2015; April 21, 2016; June 29, 2016; and July 12, 2016. *Id.* ¶ 4. During these visits, Plaintiff observed that although the property had a parking space marked for use by persons with disabilities, it was not accessible to him. *Id.* ¶ 6. Specifically, Plaintiff alleges: (1) the parking stall and the access aisle were not level because a ramp from the curb extended far into the access aisle, (2) the space lacked "[t]he mandated pole or wall mounted signage with the wheelchair logo," (3) the space lacked "[t]he required 'Minimum Fine $250' sign," and (4) the lot lacked "[t]he required tow-away signage."[1] ECF No. 89-1 ("Pl. Mot. for Summ. Judgment") at 4-5. These problems, says Plaintiff, rendered the parking at the Spa out of compliance with the applicable standards under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. *Id.* at 10. Plaintiff claims he experienced "difficulty, discomfort, and frustration" from having to park in a regular space and has been deterred from visiting the Spa with greater frequency. Johnson Decl. ¶¶ 10, 13.

On August 10, 2017, Plaintiff brought this action in federal court against Cala Stevens Creek/Monroe, LLC, the then-owner of the commercial property at 321 S. Monroe Street, San Jose, California in which the Spa was located. ECF No. 1. Plaintiff subsequently amended his complaint to name the two current owners—Cala Stevens Creek/Monroe, LP and Cala Holdings, LLC—as defendants. ECF No. 31 ("SAC") ¶¶ 6-7. The Court refers to all three entities

---

[1] The Second Amended Complaint also alleged that "the parking space has been allowed to fade or get paved over," *see* ECF No. 31 ¶ 16, but Plaintiff's Motion for Summary Judgment seemingly abandons this allegation, *see* ECF No. 89-1 at 4-5.

2
Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

collectively as "Defendants." According to Defendants, Cala Stevens Creek/Monroe, LLC was subsequently dissolved and is thus no longer an owner. ECF No. 79-4 ("Cala Decl.") ¶ 1. Defendants evidently did not own or operate the Spa, ECF No. 89-10 ("Def. Resp. to Request for Admissions") at 5, which was a tenant of the building per a written lease. Cala Decl. ¶ 2.

On December 5, 2017, Plaintiff filed the Second Amended Complaint ("SAC"). In it, Plaintiff alleges violations of the ADA and seeks an injunction compelling the Spa to bring its parking into compliance. Plaintiff also seeks monetary damages for his past experiences pursuant to California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. SAC at 9-10. Plaintiff invokes this Court's federal question jurisdiction over the ADA claim, *see* 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the Unruh Act claim, *see* 28 U.S.C. § 1367. SAC ¶¶ 9-10.

Around March 31, 2018, however, the Spa permanently closed. *Id.* ¶ 4. Defendants believe the reason for the closure was that "the business never obtained a final permit to operate." *Id.* ¶ 3. Thereafter, in August 2018, the parties stipulated that a joint inspection of the premises was not necessary "in light of the business closure and proof thereof." ECF No. 50 ¶ 4. Defendants assert that the vacancy created by the Spa has not been filled. Cala. Decl. ¶ 2.

In any event, Defendants claim that before Plaintiff filed his initial complaint in August 2017, Defendants had already rectified the problems with the parking space. Defendants say they engaged a Certified Accessibility Specialist in December 2016, who flagged the same conditions Plaintiff did in his original August 10, 2017 Complaint as well as the December 5, 2017 SAC. Cala Decl. ¶ 6; ECF No. 79-2 ("Atwal Decl.") ¶ 3. Then, between December 2016 and February 2017, Defendants allegedly completed alterations that brought the space into compliance with the standards cited by Plaintiff. Cala Decl. ¶ 7; Atwal Decl. ¶ 3.

Now before the Court are the parties' respective Motions for Summary Judgment. Defendants' motion, filed on May 7, 2019, asks the Court to dismiss the ADA claim as moot and then decline to exercise supplemental jurisdiction over the state law claim. ECF No. 79-1 ("Def. Mot. for Summ. Judgment") at 2, 7. On May 21, 2019, Plaintiff responded that the ADA claim is

3

Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

1  not moot. Then, on June 27, 2019, Plaintiff filed his own Motion for Summary Judgment as to the
2  entire case. ECF No. 89. In opposition to Plaintiff's motion, Defendants simply reiterate the
3  jurisdictional arguments they made in their motion. *See* ECF No. 90.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the moving party will bear the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On the other hand, for an issue for which the party opposing summary judgment will have the burden of proof at trial, the movant need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmoving party "may not merely state that it will discredit the moving party's evidence at trial," in the hopes that

4

Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

it can later develop evidence to support its claim. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

### B. Mootness

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* (internal quotations omitted). Mootness thus deprives a court of jurisdiction over an issue. See *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996). If, due to some event that occurs during litigation, "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," the case must be dismissed as moot. *Tate v. Univ. Med. Ctr. of S. Nevada*, 606 F.3d 631, 634 (9th Cir. 2010) (citation omitted); *see also Spencer v. Kemna*, 523 U.S. 1,18 (1998) (a case is moot when "there is nothing for [the court] to remedy, even if [it] were disposed to do so"). Although ordinarily the party invoking a court's jurisdiction has the burden of establishing its existence, *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), it is the party seeking to dismiss a case as moot that has the "heavy burden of establishing that no effective relief remains for the court to provide." *Chang v. United States*, 327 F.3d 911, 918–19 (9th Cir. 2003); *see also GATX/Airlog Co. v. United States District Court*, 192 F.3d 1304, 1306 (9th Cir. 1999).

### III. DISCUSSION

Plaintiff brings two distinct causes of action: one for injunctive relief under the ADA and one for monetary damages under the Unruh Act. The parties' dispute regarding mootness concerns only the first cause of action, so the Court begins its analysis there. The Court then turns to the Unruh Act claim, which Defendants believe should also be dismissed for lack of jurisdiction as a matter of this Court's discretion and as to which Plaintiff seeks summary judgment on the

5

merits.

## A. The ADA Claim

Title III of the ADA prohibits discrimination on the basis of disability in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of a "place of public accommodation," such as a spa. 42 U.S.C. §§ 2000a(b), 12182(a); *see Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011). The statute specifies that discrimination includes the "failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Relevant here, a lack of accessible parking constitutes a barrier under the ADA. *See, e.g.*, *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 853 (N.D. Cal. 2011).

Because "damages are not recoverable under Title III of the ADA," *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002), Plaintiff seeks injunctive relief for Defendants' alleged violations of the ADA. Defendants give two reasons why Plaintiff's claim for injunctive relief is moot: (1) the Spa has permanently closed and the premises are currently unoccupied, and (2) "all alleged barriers to access . . . have been remedied" such that the parking at the premises "now compl[ies] with the applicable ADA requirements." Def. Mot. for Summ. Judgment at 2. The Court addresses each reason in turn.

It is well-established that in order to obtain injunctive relief under the ADA, a plaintiff must "demonstrate a sufficient likelihood that he will again be wronged in a similar way. That is, he must establish a real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2010). This can either be done "by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 950 (9th Cir. 2011) (en banc). If, however, the public accommodation that Plaintiff seeks to patronize shutters its doors, the threat of future injury dissipates. For that reason, the Ninth Circuit has said that "claims for prospective injunctive relief" under the ADA become moot once the business has "ceased operation." *Kohler v. Southland Foods, Inc.*, 459 F. App'x 617, 618 (9th Cir. 2011) (affirming the district court's grant

6

of summary judgment to defendants); *see also Disabled Rights Action Comm. v. Fremont St. Experience LLC*, 44 F. App'x 100, 103 (9th Cir. 2002) (finding claim for an injunction "moot given that the Race Rock has gone out of business for reasons unrelated to this litigation"); *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1135 n.1 (9th Cir. 2002) (noting with approval that, because "the parties stipulated that the Anderson store has closed," the district court had dismissed plaintiff's ADA claims as to that store as moot).

Here, the Spa at the center of Plaintiff's suit closed in March 2018. As just explained, this fact renders the request for an injunction moot and thus deprives the Court of subject matter jurisdiction. In his opposition brief, Plaintiff protests that Defendants have not provided "supporting evidence" "that the business is indeed closed." ECF No. 80 ("Pl. Opp. to Def. Mot. for Summ. Judgment") at 2. But the parties stipulated to that fact, *see* ECF No. 50 ¶ 4, so Plaintiff has no basis for now objecting. Plaintiff also suggests that the closure may not be permanent. Pl. Opp. to Def. Mot. for Summ. Judgment at 2. Plaintiff has no evidence to support his supposition. Meanwhile, the property has been vacant since the Spa closed over a year ago. Under these circumstances, the possibility of the Spa reopening is too "remote and speculative," *Doe v. Reed*, 697 F.3d 1235, 1239 (9th Cir. 2012), to save the case from mootness. *See Johnson v. Otter*, No. 18-CV-01689-BLF, 2019 WL 452040, at *3 (N.D. Cal. Feb. 5, 2019) (refusing to infer that the defendant "will resume operations"). Accordingly, the Court must dismiss for lack of jurisdiction Plaintiff's claim for injunctive relief under the ADA.

Defendants argue the case is moot for the additional reason that renovations they made between late 2016 and early 2017 have remedied all the issues identified by Plaintiff. It is true that "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver*, 654 F.3d at 905; *see also Johnson v. Gallup & Whalen Santa Maria*, No. 17-CV-01191-SI, 2018 WL 2183254, at *4 (N.D. Cal. May 11, 2018) ("There can be no effective relief here, where defendants have already removed the architectural barriers that plaintiff identified in the complaint."). Importantly, though, this Court has previously said that "[c]onclusory opinions that the 'facility is free of non-compliant issues,' or that particular

7

features, e.g., the accessible parking or point of sale, 'comply with all applicable access requirements,'" are "an insufficient basis on which to grant summary judgment." *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 882–83 (N.D. Cal. 2015), *aff'd sub nom. Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883 (9th Cir. 2017). Such statements must "provide factual support" in order to support a finding that the property has come into compliance with the applicable ADA standards. *Id.* (offering the following example of a properly supported opinion: "the pick-up counter . . . as modified now provides a length of 36 inches and a height of 34 inches, as such it complies with access regulations."). Here, the affidavits proffered by Defendants likely would not suffice. *See generally* Atwal Decl., ECF No. 79-3 ("Layman Decl."). Having found that the Spa's closure mooted Plaintiff's ADA claim, however, the Court need not reach Defendants' alternative mootness argument.

**B. The Unruh Act Claim**

Plaintiff's state law claim is a different story. "A violation of the ADA is, by statutory definition, a violation of . . . the Unruh Act." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012) (citing Cal. Civ. Code §§ 51(f), 54.1(d)). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Plaintiff has done just that. Plaintiff seeks an award of $12,000, representing $4,000 in statutory damages for each of "two personal encounters with the barriers," plus an additional $4,000 "for his subsequent deterrence." Pl. Mot. for Summ. Judgment at 16. This claim remains live despite the mootness of Plaintiff's request for an injunction under the ADA "[b]ecause a claim for damages under the Unruh Act looks to past harm," *Arroyo v. Aldabashi*, No. 16-CV-06181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15, 2018). *See Johnson v. Starbucks Corp.,* No. 16-CV-00724-DMR, 2018 WL 5099283, at *5 (N.D. Cal. Oct. 17, 2018) (deciding the merits of the plaintiff's Unruh Act claim after dismissing his ADA claim).

The Court's jurisdiction over Plaintiff's Unruh Act claim is nevertheless in dispute. The claim is before this Court pursuant to the Court's supplemental jurisdiction, *see* 28 U.S.C. §

8

Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

1367(a), based on the claim's close relation to Plaintiff's federal cause of action under the ADA. A district court "may decline to exercise supplemental jurisdiction" if, as here, it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). At the same time, the court has discretion to keep the state law claims, taking into account considerations of "judicial economy, convenience, fairness, and comity." *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)).

Defendants correctly point out that "in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* (cleaned up). But this is not the usual case. Because Plaintiff's Unruh Act claim is predicated on a violation of the ADA, the Court will primarily look to federal law to decide the issues in the case. The Court need not apply a novel or complex body of state law, nor will the Court deprive California courts of any significant opportunity to develop state law. Hence, comity does not counsel against retaining jurisdiction. As for judicial economy, the case has been pending for over two years, several mediation sessions have been held, and discovery has closed. The parties also raise no concerns about their convenience or fairness. *See* Def. Mot. for Summ. Judgment at 9-10. Finally, the Court notes that it has previously kept a plaintiff's Unruh Act claim after dismissing his cause of action under the ADA. *See, e.g., Johnson v. Starbucks Corp.*, 2018 WL 5099283, at *6; *Ramirez v. Fulton Mkt. Place S.C., L.P.*, No. C 15-03793 WHA, 2016 WL 4492575, at *2 (N.D. Cal. Aug. 26, 2016). The Court therefore exercises its discretion to retain Plaintiff's California state law claim.

As to the merits, Plaintiff moves for summary judgment that Defendants violated the Unruh Act claim by violating the ADA.[2] To prevail on a claim under Title III of the ADA, a

---

[2] The Court notes that "[t]here are several avenues by which a plaintiff can prevail on a disability discrimination claim under . . . the Unruh Act," one of which is to prove that a defendant intentionally violated California accessibility requirements. *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1074 (N.D. Cal. 2014) (citing *Munson v. Del Taco*, 46 Cal. 4th 661, 672 (2009)). However, Plaintiff pursues only one avenue. He argues that, because "defendant violated the ADA," "there has been a per-se [sic] violation of Unruh." Pl. Mot. for Summ. Judgment at 13-14. The Court therefore need not consider any potential alternative theories.

9
Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

plaintiff must show (1) he is disabled within the meaning of the ADA; (2) the defendants are private individuals or entities that own, lease, or operate a place of public accommodation; and (3) he was denied public accommodations by the defendants because of his disability. *Molski*, 481 F.3d at 730. This last requirement "is met if there was a violation of applicable accessibility standards." *Moeller*, 816 F. Supp. 2d at 847.

Plaintiff easily meets his burden of fulfilling elements (1) and (2). As to the first, he has submitted a declaration attesting to his disability, Johnson Decl. ¶ 2, which Defendants do not contest. As to the second, Defendants have admitted that the Spa was a place of public accommodation, ECF No. 34 ("Answer") ¶ 23, and that Defendants own the property at 321 S. Monroe Street, Def. Resp. to Request for Admissions at 5.

Turning to the third element, accessibility requirements can differ depending on when the public accommodation was constructed or last altered. *See Moeller*, 816 F. Supp. 2d at 847-48. Whereas places of public accommodation that were altered or constructed after 1993 must be "readily accessible to and usable by individuals with disabilities," 42 U.S.C. § 12183(a)(1), architectural barriers in then-existing facilities need only be removed if doing so is "readily achievable," *id.* § 12182(b)(2)(A)(iv). *See Chapman*, 631 F.3d at 945. Moreover, although the ADA Accessibility Guidelines ("ADAAG") define what constitutes an architectural barrier in any case, *id.*, the applicable standards may be those promulgated in 1991 or in 2010, *see* 28 C.F.R. §§ 36.406(a), 36.304(d) (exempting certain facilities or elements from compliance with the 2010 standards). Here, neither party provided any evidence regarding when the property was constructed or altered. Fortunately, Plaintiff has established that Defendants violated both the 1991 and 2010 ADAAG, even under the less stringent "readily achievable" standard. *See Johnson v. Starbucks Corp.*, 2018 WL 5099283, at *3.

At the outset, Defendants have admitted that removal of the barriers alleged in the complaint is "readily achievable." Def. Resp. to Request for Admissions at 6. The question then becomes whether the facility violated accessibility requirements during Plaintiff's visits in 2015 and 2016. Under both the 1991 and 2010 Guidelines, any business that provides parking must

10

Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

provide spaces reserved for persons with disabilities, including at least one that is "van" accessible. *See* 28 C.F.R. Pt. 36, App. D § 4.1.2(5)(b) (1991 ADAAG); 36 C.F.R. Pt. 1191, App. B § 208.2.4 (2010 ADAAG). In particular, a van accessible space must include an adjacent access aisle, and the two must be "level." *See* 28 C.F.R. Pt. 36, App. D § 4.1.2(5)(b); 36 C.F.R. Pt. 1191, App. D § 502.4. The 1991 Guidelines define "level" as not exceeding a slope of 1:50 (2%), 28 C.F.R. Pt. 36, App. D § 4.1.2(5)(b); the 2010 Guidelines define "level" as not exceeding a slope of 1:48, 36 C.F.R. Pt. 1191, App. D § 502.4.

In this case, the parking space at the Spa apparently had a curb ramp with a 6.5% gradient extending into the access aisle. Plaintiff proffers his own affidavit stating that he personally encountered this condition on several occasions, including on June 29 and July 12, 2016. *See also* ECF No. 89-6 at 4-5. Plaintiff has also submitted an affidavit and photo evidence from an investigator confirming that this condition existed on August 6, 2016, within two months of Plaintiff's last two visits. *See* ECF No. 89-7 ("Anderson Decl.") ¶¶ 6-9; ECF No. 89-8. That evidence—which Defendants have not rebutted—suffices to meet Plaintiff's burden of showing there is no genuine issue of fact that the access aisle had a 6.5% gradient during at least two of his visits.

Plaintiff points to three other problems with the van accessible parking space at the Spa: (1) there was no signage with the wheelchair logo, (2) there was no "Minimum Fine $250" sign, and (3) there was no tow-away signage. Although the same evidence discussed above supports a finding that these deficiencies existed, Plaintiff has not established that they amount to a violation of the ADA. Plaintiff identifies no provision of the ADAAG requiring any of the missing signage. Instead, according to Plaintiff, the ADAAG incorporates the California Building Code—which he claims requires the signage—as the standard for properly marking an accessible parking space under the ADA. Pl. Mot. for Summ. Judgment at 10-11. Yet, the provision Plaintiff cites simply does not substantiate that assertion. *See id.* (citing 36 C.F.R. Pt. 1191, App. D § 502.3.3). There is therefore no basis for treating a violation of the California Building Code as a per se violation of the ADA, and the Court declines to do so. Other courts have come to the same conclusion. *See*

11

Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

*Johnson v. Lababedy*, No. 2:16-CV-0126 KJM AC, 2016 WL 4087061, at *5 (E.D. Cal. Aug. 2, 2016) ("[T]he CBC requirements are not mandatory, and failure to comply with them does not amount to a violation of the ADA."); *Eiden v. Home Depot USA, Inc.*, No. CIVS04-977 LKK/CMK, 2006 WL 1490418, at *8 (E.D. Cal. May 26, 2006) ("[T]he ADAAG . . . are the exclusive standards by which to establish architectural barriers under Title III."). Accordingly, the Court rejects Plaintiff's assertion that the missing signage constitutes an ADA violation.

Nevertheless, the excessive slope of the access aisle is enough to establish a violation of the ADA and thus of the Unruh Act. Under the Unruh Act, a plaintiff is entitled to statutory damages of $4,000 for each occasion on which he is denied equal access or "deterred . . . from attempting to enter a place of public accommodation." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000); *see* Cal. Civ. Code § 52. The Court is satisfied that, based on Plaintiff's several trips to the Spa and his actual knowledge of the violation from those trips, Plaintiff was also deterred by the lack of a compliant parking space. Plaintiff has therefore adequately justified his requested award of $12,000 for two actual visits and one instance of deterrence.

In sum, the Court GRANTS Plaintiff's motion for summary judgment on the sole ground that the access aisle was not level with the parking space, in violation of the 1991 and 2010 ADAAG.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES the ADA claim for lack of jurisdiction and DENIES Plaintiff's motion for summary judgment as to the same. The Court DENIES Defendants' motion for summary judgment and GRANTS Plaintiff's motion for summary judgment as to the Unruh Civil Rights Act claim for $12,000 in statutory damages.

**IT IS SO ORDERED.**

Dated: August 16, 2019

_____
LUCY H. KOH
United States District Judge

12
Case No. 17-CV-04574-LHK
ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT