UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>          Plaintiff,<br><br>     v.<br><br>CALA STEVENS CREEK/MONROE, LLC, et al.,<br><br>          Defendants. | Case No. 17-CV-04574-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 105 |

Plaintiff Scott Johnson ("Plaintiff") brought this action against Defendants Cala Stevens Creek/Monroe, LLC, Cala Stevens Creek/Monroe, LP, and Cala Holdings, LLC (collectively "Defendnats") and alleged violations of the Americans with Disabilities Act of 1990 ("ADA") and California Unruh Civil Rights Act ("Unruh Act").  On August 16, 2019, the Court granted Plaintiff's motion for summary judgment with regard to Plaintiff's Unruh Act claim, but the Court dismissed Plaintiff's ADA claim.  *See* ECF No. 95 at 12.  Before the Court is Plaintiff's motion for attorneys' fees and litigation costs.  ECF No. 105.  Having considered the submissions of the parties, the relevant law, and the records in these cases, the Court GRANTS in part and DENIES in part Plaintiff's motion for attorney's fees and costs.

1

Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

## I. BACKGROUND

Plaintiff Scott Johnson has quadriplegia, which means he cannot walk and uses a wheelchair to move through the world. As a consequence, he drives a specially equipped van for which he has been issued a Disabled Person Parking Placard by the California Department of Motor Vehicles. ECF No. 89-4 ("Johnson Decl.") ¶ 3. According to Plaintiff, he visited Sunny Valley Spa on at least five occasions: on June 19 2015; October 15, 2015; April 21, 2016; June 29, 2016; and July 12, 2016. *Id.* ¶ 4. During these visits, Plaintiff observed that although the property had a parking space marked for use by persons with disabilities, it was not accessible to him. *Id.* ¶ 6. Specifically, Plaintiff alleged: (1) the parking stall and the access aisle were not level because a ramp from the curb extended far into the access aisle, (2) the space lacked "[t]he mandated pole or wall mounted signage with the wheelchair logo," (3) the space lacked "[t]he required 'Minimum Fine $250' sign," and (4) the lot lacked "[t]he required tow-away signage." ECF No. 89-1 ("Pl. Mot. for Summ. Judgment") at 4-5. These problems, says Plaintiff, rendered the parking at the Spa out of compliance with the applicable standards under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. *Id.* at 10. Plaintiff claims he experienced "difficulty, discomfort, and frustration" from having to park in a regular space and has been deterred from visiting the Spa with greater frequency. Johnson Decl. ¶¶ 10, 13.

On August 10, 2017, Plaintiff brought this action in federal court against Cala Stevens Creek/Monroe, LLC, the then-owner of the commercial property at 321 S. Monroe Street, San Jose, California in which the Spa was located. ECF No. 1. Plaintiff later amended his complaint to name the two current owners—Cala Stevens Creek/Monroe, LP and Cala Holdings, LLC—as defendants. ECF No. 31 ("SAC") ¶¶ 6-7. On December 5, 2017, Plaintiff filed the Second Amended Complaint ("SAC"), in which Plaintiff alleged violations of the ADA and sought an injunction compelling the Spa to bring its parking into compliance as well as monetary damages pursuant to California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. SAC at 9-10.

On May 7, 2019, Defendants filed a motion for summary judgment, ECF No. 79, and on

June 27, 2019, Plaintiff filed his own motion for summary judgment. ECF No. 89. On August 16, 2019, the Court dismissed Plaintiff's ADA claim for mootness and "lack of jurisdiction" but granted Plaintiff's motion with respect to Plaintiff's Unruh Act claim. ECF No. 95 at 1, 12. Accordingly, on September 5, 2019, the Court entered judgment in favor of Plaintiff, ECF No. 99, and on the same day the Court ordered the parties to conduct a settlement conference on the issue of attorney's fees. ECF No. 98. In that order, the Court also ordered "Plaintiff [to] refrain from filing a motion for attorney's fees until 30 days after the date of the settlement conference." *Id*. at 1.

On November 21, 2019, the parties held a settlement conference but failed to reach a settlement agreement with respect to attorney's fees, ECF No. 104. As a result, on January 22, 2020—more than 30 days after the November 21, 2019 settlement conference—Plaintiff filed the instant motion for attorney's fees and costs. ECF No. 105 ("Mot."). On March 2, 2020, following the Court's order permitting Plaintiff to file a motion to amend the exhibits, ECF No. 107, Defendants filed an amended opposition—again, with the Court's permission. ECF No. 111 ("Opp."). On March 16, 2020, Plaintiff filed a reply. ECF No. 112 ("Reply").

## II.   LEGAL STANDARD

Pursuant to both the ADA and California's Unruh Act, a prevailing plaintiff may pursue attorney's fees. Specifically, the ADA provides that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Similarly, under the Unruh Act, a prevailing party can recover "any attorney's fees that may be determined by the court." Cal. Civ. Code § 52(a). A prevailing party is one who "achieve[s] a material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129-30 (9th Cir. 2008) (internal quotation marks omitted).

The calculation of a reasonable fee award is a two-step process. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, a court begins by calculating the "lodestar figure," or

presumptive award, by multiplying the hours reasonably spent on the litigation by the attorney's reasonable hourly rate. *See Hensley*, 461 U.S. at 433. Second, the court may enhance or reduce the lodestar figure based on the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that were not subsumed in the initial lodestar determination. *Fischer*, 214 F.3d at 1119. "A strong presumption exists that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases." *Id.* n.4 (internal quotation marks omitted).

In addition to permitting recovery of attorney's fees, the ADA permits a district court, in its discretion, to award "litigation expenses" and "costs" to a prevailing party. 42 U.S.C. § 12205. "Litigation expenses" include reasonable out-of-pocket expenses that would normally be charged to a fees-paying client, such as expert witness fees, certain travel expenses, and the preparation of exhibits. *See Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002); *see also Riker v. Distillery*, 2009 WL 4269466, at *5 (E.D. Cal. Nov. 25, 2009). However, "unlike the ADA, the [] Unruh Act do[es] not provide for out-of-pocket litigation expenses." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1294 (N.D. Cal. 2014); *see also Johnson v. Hey Now Props. LLC*, 2019 WL 586753, at *4 (E.D. Cal. Feb. 13, 2019) ("Unlike the ADA, the Unruh Act contains no mention of litigation expenses as allowable costs."); Cal. Civ. Code § 52(a) (failing to mention out-of-pocket litigation expenses).

### III.   DISCUSSION

Plaintiff's counsel originally sought "attorney['s] fees and costs in the amount of $48,816.00 pursuant to 42 U.S.C. § 12205 [and] California Civil Code § 52(a)." Mot. at 1. Of that $48,816.00 total, Plaintiff's counsel seeks $41,829.00 in fees for 85.8 hours worked and $6,897.00 in litigation costs and expenses. ECF No. 105-3 at 1. Additionally, Plaintiff's counsel seeks to add an additional 8.2 hours for the drafting the reply and participating in an oral argument that did not take place, which amounts to an additional $4,100 in fees. In total, Plaintiff's counsel seeks $52,916 for attorney's fees and litigation costs and expenses.

Defendants oppose Plaintiff's motion and argue that Plaintiff's counsel's motion is untimely, utilizes an excessive hourly rate, inappropriately bills hours "not reasonably and necessarily expended," and inappropriately bills expert costs. *See* Opp. at 1-11. The Court addresses each of Defendants' arguments in turn.

### A. Timeliness of Motion for Attorneys' Fees

Defendants argue that the Court should deny Plaintiff's motion for attorney's fees because the motion is untimely. *See* Opp. at 2-3. Specifically, Defendants argue that Federal Rule of Civil Procedure 54(d) and Civil Local Rule 54.5 required Plaintiff's counsel to file the instant motion "on or before January 6, 2019" and that "Plaintiff delayed more than two weeks beyond the time for filing the motion pursuant to Rule 54 and Local Rule 54.5." *Id.* at 2. The Court disagrees.

Federal Rule of Civil Procedure 54(d)(2)(B) requires that, "[u]nless a statute or a court order provides otherwise," a motion for attorney's fees "be filed no later than 14 days after the entry of judgment." Similarly, Civil Local Rule 54.5(a) states that "[u]nless otherwise ordered by the Court . . . motions for attorney's fees . . . must be served and filed within 14 days of entry of judgment."

Here, Rule 54(d)(2)(B) and Local Rule 54.5(a) do not apply. The Court previously ordered Plaintiff to "refrain from filing a motion for attorney's fees until 30 days after the date of the settlement conference." ECF No. 98 at 1. That order superseded both Rule 54(d)(2)(B) and Local Rule 54.5(a), which both permit the Court to alter any deadlines. Additionally, because the Court's order did not set a deadline and instead only ordered Plaintiff to "refrain from filing a motion for attorney's fees until 30 days after the date of the settlement conference," Plaintiff's motion was not untimely. *Id.* Accordingly, the Court rejects Defendant's argument that Plaintiff's motion for attorney's fees must be denied as untimely.

### B. Plaintiff's Counsel's Hourly Rate

The Court now turns to the substance of the motion for attorney's fees and costs. The first step in the determination of a lodestar figure is to determine the reasonable hourly rate to be

5

Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

applied. *Fischer*, 214 F.3d at 1119. To determine the prevailing market rate in the relevant legal community, courts primarily look to the rates of attorneys practicing in the forum district (here, the Northern District of California). *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The applicant bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line with prevailing market rates. *See Fischer*, 214 F.3d at 1121 (citing *Hensley*, 461 U.S. at 433). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Put differently, the party seeking fees bears the burden to prove the reasonableness of hours expended using detailed time records documenting completed tasks and time expended. *Hensley*, 461 U.S. at 437; *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.").

When a party seeking fees submits declarations, courts must consider those declarations and cannot substitute that analysis by only considering previous fee awards. *Id*. ("The district court diverged from the applicable standard in discarding the declarations entirely and considering only the previous fee awards in determining the prevailing market rate.") Indeed, the Ninth Circuit has explained that solely "[e]xamining prior fee awards to [even the same attorneys] in the district [is] not an acceptable substitute for considering declarations submitted by [that attorney], and explaining why those declarations did or did not establish the prevailing hourly rate in the district." *Id*. at 1025.

At the same time, district courts must remember that "[a] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quotation marks omitted). The purpose of granting fees in cases like the instant case is both "to attract qualified counsel to civil rights cases and [to] avoid[] a windfall to counsel. The way to do so is to

6
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.* (quotation marks, citations, and internal alterations omitted).

Here, "Plaintiff's counsel seeks rates between $410 per hour and $650 per hour based on the experience of the attorney's that staffed this matter, as well as the prevailing rates of the community in which this matter is venued." Mot. at 8. Specifically, Plaintiff's counsel seeks the following rates: $650 per hour for attorneys Potter, Handy, and Grace; $500 per hour for attorneys Carson, Melton, D. Price, and Seabock; and $410 per hour for attorneys Goodman, Gunderson, McAllister, Montgomery, P. Price, and Smith. *See* ECF No. 105-2 ¶¶ 5-17 ("Potter Decl.")

Plaintiff's counsel submitted the declaration of John O'Connor to justify their claimed hourly rates. ECF No. 105-4 ("O'Connor Decl."). According to O'Connor, attorneys Potter, Handy, Grace, and Melton have between twenty-one and twenty-six years of experience. *Id*. ¶ 30. Attorneys Carson, D. Price, Gunderson, Montgomery, Seabock, and Smith—who are all associates—have between four years of experience and nine years of experience. *Id.* Attorney P. Price is also an associate, has practiced in New York since 2005, and became a member of the California bar in 2018. *Id.* P. Price has approximately fourteen years of experience, according to O'Connor. *Id*.

Based on the experience of the attorneys at issue in the instant case, O'Connor "opine[d]" that "the most appropriate rate for partners' [Potter, Handy, and Grace's] ADA services range from $450 to $750 per hour." *Id*. ¶¶ 27, 33. "[F]or associates' services," the "most appropriate range" is "from $300 to $550 per hour." *Id*. ¶¶ 29, 30, 33. O'Connor declared that his opinion was also based on "recent rates awarded in the Northern District, and disability rates in the Bay Area in general," which he has "kept abreast of . . . since at least 2000." *Id*. ¶ 29. As a result, Plaintiff's counsel seeks rates of $650 per hour for attorneys Potter, Handy, and Grace; $500 per hour for attorneys Carson, Melton, D. Price, and Seabock; and $410 per hour for attorneys Goodman, Gunderson, McAllister, Montgomery, P. Price, and Smith. *See* Potter Decl. ¶¶ 5-17.

Defendants' main response is that "Plaintiff's counsel has repeatedly made demands for

the hourly rates sought in the present motion and has repeatedly been rebuffed by Northern District Courts." Opp. at 3. Specifically, Defendants point to a number of cases in this district from 2017, 2018, and 2019, where courts granted the following reduced rates for the attorneys involved in the instant matter: $425 per hour for attorneys Potter, Handy, and Grace; $300 per hour for attorneys Carson, Melton, D. Price, and Seabock; and $250 for attorneys Montgomery, McAllister, P. Price, Goodman, Smith, and Gunderson. *Id*. at 4 (collecting cases). Defendants request that the Court similarly reduce the rates in the instant case.

The problem with Defendants' argument, however, is that it contradicts Ninth Circuit precedent. Just last year, the Ninth Circuit held that "[e]xamining prior fee awards to [even the same attorneys is] not an acceptable substitute for considering declarations submitted by [those attorneys], and explaining why those declarations did or did not establish the prevailing hourly rate in the district." *Roberts*, 938 F.3d at 1025. As a result, the Court cannot solely look at past awarded rates—even though those rates may be for the same attorneys—to determine what rates to award in the instant case.

Rather, the Court must also assess Plaintiff's counsel's declarations and evidence. Here, Plaintiff's counsel asserts, based on the O'Connor Declaration, that "the most appropriate rate for partners' [Potter, Handy, and Grace's] ADA services range from $450 to $750 per hour" and that "for associates' services," the "most appropriate range" is "from $300 to $550 per hour." O'Connor Decl. ¶¶ 27, 33. However, this alone does not justify Plaintiff's counsel's claimed rates of $650 per hour for attorneys Potter, Handy, and Grace; $500 per hour for attorneys Carson, Melton, D. Price, and Seabock; and $410 per hour for attorneys Goodman, Gunderson, McAllister, Montgomery, P. Price, and Smith. Potter Decl. ¶¶ 5-17. These rates are all on the higher end of O'Connor's claimed reasonable rates, and Plaintiff's counsel does not adequately justify these specific rates.

For example, in ADA cases, courts typically permit analogous rates for attorneys with far more experience than Plaintiff's counsel. *See, e.g., Rodriguez*, 53 F. Supp. 3d at 1268 (awarding

8

Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

fees at $645 per hour for an attorney who was a "member of the California bar for over forty-five years" and because "defendants d[id] not contest that $645/hour [was] a reasonable rate"); *Martin v. Diva Hosp. Grp., Inc.*, 2018 WL 6710705, at *2 (N.D. Cal. Dec. 7, 2018) (awarding fees of $700 per hour for attorneys with almost thirty years of experience and awarding fees of $795 per hour for an attorney with almost fifty years of experience—rates that the defendants did not contest as unreasonable). Even then, however, courts have noted "that a rate over $700/hour is the exception, and not the norm, for disability cases." *Johnson v. Rocklin of Cal. LLC*, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019) (citing *Chapman v. NJ Properties, Inc.*, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019). Rather, "[f]or attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases." *Id.* (collecting cases).

The Court acknowledges that Plaintiff's counsel has obtained a fees award consistent with what counsel requests in the instant case in *Love v. Rivendell II, Ltd., et al.*, Case No. 18-cv-03907-JST (EDL), ECF No. 25 (N.D. Cal. Mar. 11, 2019) (report and recommendation granting hourly rate of $650 for attorneys Potter, Handy, and Grace); *see id.*, ECF No. 30 (adopting report and recommendation). However, as multiple courts in this district noted, "that lone order granting an unopposed motion does not accurately reflect the prevailing rate in the community for work similar to this action," as "that order cited cases that concerned work substantially different from the work performed in this action." *Johnson v. AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (N.D. Cal. May 29, 2019); *Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (drawing same distinction). Specifically, the cases that *Rivendell* relied upon involved "a complex class action matter involving 54 hotels spread among multiple states" and set "'new precedent' that caused the California State Bar to 'change a policy which impacts potentially hundreds of individuals each year across California.'" *Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (distinguishing *Rivendell*). Nothing of that sort is at issue in the instant case.

Rather, as Plaintiff's counsel concedes, this case was relatively straightforward and

"presented no significant legal issues of first impression." Mot. at 14. When a matter "is a relatively simple one, involving straight-forward application of the law, and which does not present novel or difficult issues requiring a high level of skill or specialization," courts have generally found that higher rates are unwarranted. *See Johnson v. Oakwood Ctr. LLC*, 2019 WL 7209040, at *13 (N.D. Cal. Dec. 27, 2019).

The sheer number of ADA cases that Plaintiff's counsel is litigating simultaneously underscores the straightforward nature of Plaintiff's' counsel's cases. Attorney D. Price has stated that as of November 7, 2019, his law firm, consisting of 20 lawyers, was simultaneously litigating "over a thousand" ADA cases in the Northern District of California and approximately 1,500 ADA cases in the Central District of California. *Johnson v. Maple Tree Investors et al.*, No. 17-cv-06762-LHK, ECF No. 62 at 17, 34-36 (N.D. Cal. Dec. 4, 2019). His law firm had previously litigated approximately 2,500 ADA cases in the Eastern District of California. *Id*.

Furthermore, as noted above, Plaintiff's own expert, John O'Connor, explains that the floor for reasonable ADA rates in this district is $450 per hour for partners and $300 per hour for associates. O'Connor Decl. ¶¶ 27, 33. Recent decisions out of this district confirm that rates similar to these are reasonable. *Rocklin*, 2019 WL 3854308, at *12 (granting rates of $475 per hour for attorneys Potter and Handy and $350 per hour for attorneys Price and Seabock); *Shaw v. Kelley*, 2019 WL 5102610, at *5 (N.D. Cal. Oct. 11, 2019) (awarding $475 per hour for attorneys Potter and Grace; $350 per hour for attorneys Melton, P. Price, Carson, and Seabock; and $300 per hour for attorneys Gunderson and Montgomery); *Oakwood Ctr. LLC*, 2019 WL 7209040, at *13 (same); *Johnson v. Johnson*, 2020 WL 901517, at *6 (N.D. Cal. Feb. 25, 2020) (awarding $475 per hour to attorneys Potter and Handy and $450 to attorney Grace).

Finally, these rates are reasonable for this district because, as the Ninth Circuit has explained, "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel*, 893 F.3d at 1158 (quotation marks omitted). As Defendants point out, Plaintiff's counsel has filed scores of cases in this district, and

there is simply no evidence that rates of approximately $475 per hour for partners and approximately $300 to $350 per hour for associates are insufficient to induce capable attorneys to undertake ADA litigation in this district. *See id.*; *see also Johnson v. Maple Tree Investors et al.*, No. 17-cv-06762-LHK, ECF No. 62 at 17, 34-36 (N.D. Cal. Dec. 4, 2019) (transcript of November 7, 2019 hearing where attorney D. Price represented that his law firm has simultaneously "over a thousand" ADA cases in this district and approximately 1,500 ADA cases in the Central District of California and had litigated approximately 2,500 ADA cases in the Eastern District of California). Indeed, the Ninth Circuit has noted "district court[s] must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases *and avoiding a windfall to counsel*." *Vogel*, 893 F.3d at 1158 (emphasis added and quotation marks, citations, and internal alterations omitted). The Court finds that awarding the fees requested by Plaintiff's counsel would be little more than a prohibited windfall. *See id.*

Accordingly, in light of Plaintiff's declarations and evidence, case law from this district concerning reasonable attorney's fees, and binding Ninth Circuit precedent, the Court determines that the following hourly rates are reasonable for the instant case: $475 per hour for attorneys Potter, Handy, and Grace; $350 per hour for attorneys Carson, Melton, D. Price, and Seabock; and $300 per hour for attorneys Goodman, Gunderson, McAllister, Montgomery, P. Price, and Smith.

**B. Plaintiff's Number of Hours**

Having determined the reasonable hourly rate to be applied, the Court proceeds to determine the number of hours reasonably expended on the litigation. *Fischer*, 214 F.3d at 1119. The Court acknowledges that it "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). At the same time, however, the Ninth Circuit has recently explained that "district courts have a *duty* to ensure that claims for attorneys' fees are reasonable, and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the numbers of

hours expended on the case. Rather, a district court must ensure that the winning attorneys have exercised billing judgment." *Vogel*, 893 F.3d at 1160 (emphasis in original and quotation marks and citations omitted).

At the outset, the Court notes that Plaintiff's counsel's billing records indicate that thirteen attorneys expended 85.8 hours litigating the instant case before filing the instant motion's reply. ECF No. 107-3 at 1 ("Billing Summary"); Reply at 15 ("In Plaintiff's moving papers, the time associated handling the reply was not included as it had not yet been incurred and the nature of the matter made it difficult to estimate."). Moreover, Plaintiff's counsel concedes that the instant case was admittedly a straightforward case that "presented no significant legal issues of first impression." Mot. at 14.

The Court further notes that Attorney D. Price has stated that as of November 7, 2019, his law firm, Potter Handy, consisting of 20 lawyers, was simultaneously litigating "over a thousand" ADA cases in the Northern District of California and approximately 1,500 ADA cases in the Central District of California. *Johnson v. Maple Tree Investors et al.*, No. 17-cv-06762-LHK, ECF No. 62 at 17, 34-36 (N.D. Cal. Dec. 4, 2019). His law firm had previously litigated approximately 2,500 ADA cases in the Eastern District of California. *Id.* With over a thousand ADA cases in the United States District Court for the Northern District of California alone and experience with approximately 5,000 ADA cases in the United States District Courts for the Eastern, Northern, and Central Districts of California, the Court would expect significant efficiencies as well as templates that Plaintiffs' counsel could use in every case.

However, any gained efficiencies from Plaintiff's counsel's extensive litigation experience are not apparent from Plaintiff's counsel's billing entries. For example, attorney Handy, who is a named partner of the law firm of Potter Handy and has twenty-one years of experience according to O'Connor, repeatedly billed six minutes to review short boilerplate docket entries and notices often even on the same day. For example, on August 14, 2017 and August 16, 2017, attorney Handy billed 18 minutes to review a short docket entry setting a case management conference, a

12
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

short docket entry noting the impending reassignment of the case to a U.S. District Judge, and a boilerplate short order reassigning the case to a U.S. District Judge. Billing Summary at 2. These short, boilerplate notices are common to all ADA cases. *See* ECF Nos. 7, 9.

Similarly, on August 10, 2017, attorney Handy billed six minutes to review a single docket entry that assigned the case to Magistrate Judge Nathanael M. Cousins then billed twelve minutes to review the summons, which Plaintiff had drafted, and a boilerplate ADA case scheduling order that is issued in all ADA cases. ECF Nos. 3, 4, 6; Billing Summary at 2 (charging 0.1 hours to attorney Handy to "review[] text notice re case assignment" and 0.2 hours to "[r]eview[] Court Issued Summons[] and Scheduling Order for Cases Asserting Denial of Right of Access under ADA"). Given that these are short, boilerplate documents, one of which Plaintiff's counsel drafted, and Plaintiff's counsel's extensive experience litigating ADA cases in this district and elsewhere, such tasks should not take this amount of time.

Furthermore, on October 18, 2017, Handy billed six minutes to review a two-line text notice of an electronic filing error and then another six minutes to review a three-sentence order granting a motion for administrative relief requesting extension of time to complete service. Billing Summary at 3; ECF No. 15. This order was merely the proposed order filed by Plaintiff's counsel with the addition of the Court's signature. ECF Nos. 13, 15.

Additionally, on June 13, 2018, attorney D. Price, who according to O'Connor has eight years of experience, billed 6 minutes to review a three-sentence order granting the parties' stipulation for plaintiff to file a second amended complaint and then another six minutes to review a boilerplate, three-line clerk's notice scheduling an initial case management conference that is issued in all cases. Billing Summary at 5; ECF Nos. 37, 38, 39.

Unfortunately, these billing practices were not confined to attorneys Handy or D. Price. The Court found at least 93 entries accounting for 9.6 hours where Plaintiff's counsel engaged in similar billing practices. Specifically, other attorneys also repeatedly billed six minutes to review short boilerplate docket entries and orders. *See, e.g., id*. at 5 (charging 0.1 hours to "review[]

13
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

order granting stipulation to file SAC"; *id*. (charging 0.1 hours to "review[] clerk's notice re initial case management conference"); *id*. at 7 (charging 0.1 hours to "review[] order granting Defendants' Motion to Appear by Telephone for the further CMC"); *id*. (charging 0.1 hours to "review[] clerk's notice setting ADR phone conference").

Moreover, Plaintiff's counsel repeatedly billed six minutes to give simple instructions to assistants to file documents or send emails. On pages five and six of the Billing Summary alone, attorneys charged six minutes in 19 separate entries that "instruct[] [an] assistant" to either send emails or file a document. *Id*. at 5-6. Such billing entries are present throughout Plaintiff's counsel's Billing Summary. *See id*. at 7 (charging 0.1 hours on multiple entries to "instruct[] assistant" to send emails); *id*. at 12 (charging 0.5 hours across multiple entries to "instruct[] assistant to email court clerk re scheduling settlement conference," "instruct[] assistant to coordinate with court clerk and defense counsel's office," "instruct[] assistant to follow up with defense counsel's office re scheduling settlement conference," and "direct[] assistant to circulate joint status report").

Though a six minute timekeeping practice is "generally reasonable[,] . . . a reduction is warranted." *Kalani v. Starbucks Corp.*, 2016 WL 379623, at *8 (N.D. Cal. Feb. 1, 2016); *see also Jacobson v. Persolve, LLC*, 2016 WL 7230873, at *10 (N.D. Cal. Dec. 14, 2016) ("[B]illing 0.1 hours for certain practices sometimes requires a reduction."). This is especially relevant here because Plaintiff's counsel routinely billed six minutes "for the receipt and review of multiple single sentence orders and docket entries." *Persolve*, 2016 WL 7230873, at *10. Indeed, courts in this district have admonished Plaintiff's counsel to not excessively bill "for tasks that include telling an assistant to email a copy to the Center for Disability Access, reviewing the summons and the initial ADA scheduling order, reviewing the consent notice, and reviewing other administrative docket entries." *Gonzalez v. Machado*, 2019 WL 3017647, at *6 (N.D. Cal. July 10, 2019) (order relating specifically to attorneys Potter and Handy). This is so because Plaintiff's counsel are "ADA lawyer[s] who presumably [are] familiar with routine notices received at the

outset of a case, as well as with the General Order No. 56 schedule for ADA cases." *Kalani*, 2016 WL 379623, at *8. In such situations, courts typically "reduce[] the hours by 50%." *Gonzalez*, 2019 WL 3017647, at *6 (citing *Kalani*, 2016 WL 379623, at *8, and *Persolve*, 2016 WL 7230873, at *10).

Across 12 pages of the Billing Summary, the Court counted 93 entries accounting for 9.6 hours where Plaintiff's counsel either repeatedly charged for entries from "direct[ing] assistant to circulate joint status report" to "review[ing] Clerk's Notice of impending reassignment to a U.S. District Court Judge." The Court finds that such billing practices are inappropriate, and as a result, reduces the claimed hours by 50%. Applying the 50% reduction to the instant case yields a reduction of 4.8 hours.

Moreover, there are other examples of lack of efficiency. For example, on November 19, 2018, attorney P. Price, whom O'Connor represents has over 14 years of experience, billed 18 minutes to draft a request for telephonic appearance at a further case management conference. Nearly, a year later, on September 9, 2019, attorney P. Price billed another 18 minutes to draft a request for telephonic appearance at a further case management conference. On October 10, 2017, attorney Carson, whom O'Connor represents has eight years of experience, billed 18 minutes to draft a notice of appearance and to instruct his assistant to file it. Billing Summary at 2. In litigating approximately 5,000 ADA cases in federal courts in California, the Court would expect the law firm of Potter Handy to have templates for requests for telephonic appearances and notices of appearances that could be generated more efficiently. It is also not clear why a lawyer with over 14 years of experience would take the same amount of time to draft a boilerplate request for telephonic appearance in the same case two years in a row.

In addition, the Court finds that two February 26, 2019 billing entries from attorney Seabock are inefficient and perhaps even redundant. Billing Summary at 7. In these billing entries, attorney Seabock, who has six years of experience according to O'Connor, billed 12 minutes for reviewing a single email from an assistant confirming the details of a mediation

15
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

1    conference. *Id*. That same day Seabock again billed 12 minutes for reviewing a single email from

2    the same assistant and defense counsel regarding the location of the mediation conference. *Id*.

3    The Court finds that Seabock's billing of 24 minutes to read two emails from an assistant as to the

4    location and details of a mediation conference is inefficient. This is especially so because the

5    Northern District of California's General Order 56 sets forth the requirements and schedule for all

6    ADA cases filed in the district and requires mediations for cases that do not settle at the required

7    joint inspection. *See* General Order 56 ¶ 9. Thus, Plaintiff's counsel must be intimately familiar

8    with the mediation conference requirements from Plaintiff's counsel's involvement in more than

9    1,000 ADA cases in this district.

10   Finally, the Court turns to the 8.2 hours billed for the reply. Attorney D. Price billed 8.2

11   hours in total for the reply. As stated above, D. Price billed one hour for oral argument at a

12   hearing that was vacated. D. Price also claimed that "[r]eviewing the opposition filed by

13   Defendant and reviewing the claims made took 2.9 hours," and "[t]he reply filed herein took 4.3

14   hours." ECF No. 112-1 ¶¶ 10-13. Plaintiff's counsel concedes that the 4.3 hours was

15   "substantially longer than is typical." *Id*. ¶ 11. In total, the Court finds that a reduction of 3.0

16   hours is warranted as explained below.

17   To start, Plaintiff's counsel cannot bill for the 1 hour of oral argument that never took

18   place. Additionally, Plaintiff's counsel notes that it created a "chart attached to this motion as

19   Exhibit 3"; this chart is a one-page document showing approximately 15 case names with arrows

20   pointing among them. The chart is confusing, added nothing to Plaintiff's counsel's argument,

21   and was redundant of arguments raised in the actual briefing. Plaintiff's counsel does not explain

22   how many hours were spent on this chart, but the Court approximates that the time spent was 2

23   hours given that Plaintiff's counsel concedes that the 4.3 hours spent was "substantially longer

24   than is typical." ECF No. 112-1 ¶ 11; *see Hensley*, 461 U.S. at 434 (permitting court to exclude

25   "excessive, redundant, or otherwise unnecessary" hours from fee awards). Therefore, the Court

26   finds that the recoverable hours billed by attorney D. Price for the reply will be reduced by 3 hours

United States District Court
Northern District of California

in total. As a result, Plaintiff's counsel may charge 5.2 hours to attorney D. Price for the reply.

In summary, in addition to the 4.8-hour reduction applied across numerous attorneys for reviewing short, boilerplate docket entries and documents and excessive time giving instructions to assistants, the Court applies a 0.2-hour reduction to attorney Seabock's hours. In total, the Court reduces Plaintiff's counsel's claimed 85.8 billed hours by 5.0 hours to 80.8 hours. The Court also reduces Plaintiff's counsel's claimed 8.2 billed hours for the reply by 3.0 hours to 5.2 hours.

Accordingly, the Court determines that the appropriate lodestar figure in this case is $30,023.75, calculated as follows:

| Attorney | Hours Claimed | Hours Reduced | Total Hours | Reasonable Rate | Fees Per Attorney |
|---|---|---|---|---|---|
| Potter | 2.50 hours | 0 hours | 2.50 hours | $475 per hour | $1,187.50 |
| Handy | 9.00 hours | 0.85 hours | 8.15 hours | $475 per hour | $3,871.25 |
| Grace | 1.90 hours | 0.10 hours | 1.80 hours | $475 per hour | $855.00 |
| Carson | 4.40 hours | 0.50 hours | 3.90 hours | $350 per hour | $1,365.00 |
| Melton | 0.80 hours | 0.15 hours | 0.65 hours | $350 per hour | $227.50 |
| D. Price | 32.20 hours | 3.65 hours | 28.55 hours | $350 per hour | $9,992.50 |
| Seabock | 9.40 hours | 1.60 hours | 7.80 hours | $350 per hour | $2,730.00 |
| Goodman | 8.00 hours | 0 hours | 8.00 hours | $300 per hour | $2,400.00 |
| Gunderson | 11.20 hours | 0.20 hours | 11.00 hours | $300 per hour | $3,300.00 |
| McAllister | 4.60 hours | 0.30 hours | 4.30 hours | $300 per hour | $1,290.00 |
| Montgomery | 1.60 hours | 0.05 hours | 1.55 hours | $300 per hour | $465.00 |
| P. Price | 5.10 hours | 0.50 hours | 4.60 hours | $300 per hour | $1,380.00 |
| Smith | 3.30 hours | 0.10 hours | 3.20 hours | $300 per hour | $960.00 |
| **TOTAL** | 94.00 hours | 8.00 hours | 86.00 hours | N/A | $30,023.75 |

Therefore, the Court GRANTS in part and DENIES in part Plaintiff's counsel's motion for

17
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

1  attorney's fees.  The Court awards Plaintiff's counsel reasonable attorney's fees in the amount of

2  $30,023.75 as calculated above.

### C. Plaintiff's Counsel's Inclusion of Litigation Expenses and Costs

Lastly, Plaintiff seeks $6,987.00, which includes "litigation expenses" comprising $400.00 for an investigation and $6,000.00 for expert fees, as well as costs comprising a service cost of $187.00 and a filing fee of $400.00.  Mot. at 18-19.  The Court first addresses Plaintiff's $6,400 request for litigation expenses before turning to Plaintiff's $587.00 request for service costs and filing fees.

First, with regard to Plaintiff's request for litigation expenses, Plaintiff seeks $6,400.00 for an investigation and expert fees pursuant to "Section 505 of the Americans with Disabilities Act." Mot. at 18.  Specifically, Plaintiff seeks $6,000 in expert fees for the declaration of John O'Connor.  *Id*. at 18-19; ECF No. 105-4 ("O'Connor Decl.").  The O'Connor Declaration, however, was never used to litigate any substantive issues in the instant case, but rather, was created to analyze attorney's fees in this district and to support Plaintiff's claimed hourly rates in Plaintiff's motion for attorney's fees.  *See, e.g.*, O'Connor Decl. ¶ 24 ("Based upon the foregoing, I believe I am qualified to opine on the rates applicable in this case.").  The remaining $400 in costs are simply described as "investigation . . . costs."  Mot. at 18.

The Court DENIES Plaintiff's request for $6,400 in litigation expenses.  Plaintiff's motion ignores the fact that the Court dismissed Plaintiff's ADA claim and only granted judgment in Plaintiff's favor with regard to Plaintiff's Unruh Act claim.  *See* ECF No. 95 at 1 ("[T]he Court dismisses Plaintiff's ADA claim for mootness and lack of jurisdiction . . . .").  As such, Plaintiff's request for litigation expenses can only proceed under the Unruh Act.

As courts have noted, the "Unruh Act do[es] not provide for out-of-pocket litigation expenses." *Rodriguez*, 53 F. Supp. 3d at 1294; *see also Hey Now Props.*, 2019 WL 586753, at *4 (denying litigation expenses where Plaintiff only prevailed on Unruh Act cause of action because the "Unruh Act contains no mention of litigation expenses as allowable costs").  Indeed, Plaintiff's

18
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

motion itself notes that only "[t]he federal statute, unlike the state statutes, explicitly provides for . . . litigation expenses and costs." Mot. at 19 (quotation marks omitted). Nonetheless, Plaintiff's motion offers no rationale for how or why the Court should award litigation expenses pursuant to the Unruh Act, as Plaintiff's motion *solely* argues for these expenses under the ADA. *See* Mot. at 18-19; Reply at 14-15. In other words, though a plaintiff is required to "satisfactorily explain" why he is entitled to specific litigation expenses, Plaintiff has failed to do so in the instant case. *See Kalani*, 2016 WL 379623, at *10.

Accordingly, because the Court dismissed Plaintiff's ADA claim, the Court DENIES Plaintiff's request for $6,400.00 in litigation expenses. Additionally, in any event, Plaintiff would not be entitled to $6,000 in expert costs even if Plaintiff prevailed on his ADA claim. "The discretion to award reimbursement for expert witness fees is not unlimited. In order for the district court to allow such expenses, the court must find that the expert testimony submitted was 'crucial or indispensable' to the litigation at hand." *In re Media Vision Tech. Sec. Lit.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (quoting *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 864 (9th Cir. 1986)); *Rodriquez v. Farmers Ins. Co. of Arizona*, 649 Fed. App'x 620 (9th Cir. 2016) ("District courts have discretion to reimburse expert witness fees if the expert's services were 'crucial or indispensable' to the action."). Here, Plaintiff does not, and indeed cannot, argue that expert costs related to calculating attorney's fees are "crucial or indispensable" to this disability access action.

Second, Plaintiff's counsel seeks $587.00 for service costs and filing fees. Mot. at 18-19. Defendants do not oppose Plaintiff's counsel's request. Opp. at 11.

28 U.S.C. § 1920 enumerates taxable costs and "lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). Plaintiff's counsel's "filing fees and costs of service are compensable under Section 1920." *Hey Now Props.*, 2019 WL 5867533, at *4. Though Plaintiff's counsel does not

19
Case No. 17-CV-04574-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

argue this point, it is worth noting that Section 1920 does not permit Plaintiff's counsel to recover costs for investigation or expert fees. *Hey Now Props.*, 2019 WL 586753, at *4 ("Plaintiff cannot recover as costs any of his litigation expenses for investigation and expert fees because they fall outside the purview of Section 1920." (citing *Phelps Dodge Corp.*, 896 F.2d at 407)). Accordingly, the Court GRANTS Plaintiff's counsel's request for $587.00 in service costs and filing fees.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's counsel's motion for attorney's fees and costs. Specifically, Plaintiff's counsel may recover $30,023.75 in attorney's fees. Plaintiff's counsel may also recover $587.00 in service costs and filing fees. Plaintiff's motion for attorney's fees and costs is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: May 20, 2020

_____
LUCY H. KOH
United States District Judge